# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANGRY CRAB SHACK CORPORATION, an Arizona corporation;<br><br>Plaintiff,<br><br>vs.<br><br>ANGRY CRAB CORPORATION, an Illinois corporation;<br><br>Defendant. | Case No. _____<br><br>(Jury Trial Demanded) |

## COMPLAINT

Plaintiff Angry Crab Shack Corporation ("Plaintiff") brings this action against Defendant Angry Crab Corporation ("Defendant") seeking relief for (i) Defendant's trademark infringement, false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a) and common law; and (ii) Defendant's trade dress infringement and unfair competition in violation of 15 U.S.C. § 1125(a) and common law. In support of its claims, Plaintiff alleges as follows:

## THE PARTIES

1. Plaintiff is an Arizona corporation having its principal place of business at 2740 S. Alma School Road, Mesa, Arizona 85210.

2. Defendant is an Illinois corporation doing business as The Angry Crab, having its principal place of business at 5665 N. Lincoln Avenue, Chicago, Illinois 60659.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332, 1338(a) and 1338(b) because the action involves one or more federal questions, including causes of action under the Lanham Act, and the parties are completely diverse and the matters in controversy exceed $75,000. This Court also has subject matter jurisdiction over the common law claims pursuant to 28 U.S.C. § 1367.

4. This Court has personal jurisdiction over Defendant because Defendant resides and operates in Chicago, Illinois.

5. Venue is proper in the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b)(1).

## ALLEGATIONS COMMON TO ALL COUNTS

### Plaintiff's ANGRY CRAB Marks, Logos and Trade Dress

6. Plaintiff was formed in the State of Arizona on or about August 20, 2013.

7. Plaintiff has adopted and used a family of inherently-distinctive ANGRY CRAB SHACK marks and logos to identify its casual Cajun-themed seafood restaurants.

8. Plaintiff owns and operates a Cajun-themed seafood restaurant in Mesa, Arizona under the mark ANGRY CRAB SHACK that serves a variety of seafood that guests purchase by the pound.

9. Plaintiff also owns and operates a restaurant in Phoenix, Arizona under the mark ANGRY CRAB SHACK & BBQ featuring the same Cajun-themed seafood and experience, in addition to more traditional barbeque items.

10. In addition to the ANGRY CRAB SHACK marks, Plaintiff has adopted and used a unique logo design depicting a menacing crab. The logos used for each restaurant are depicted below:




11. Plaintiff's restaurants house a true "bag boil" concept where guests are provided bibs and shell crackers and encouraged to eat with their hands.

12. Guests order their seafood by the pound, then select a sauce, and finally select a spice level for the preparation of their seafood. The menu features many Cajun themes, including offering crawfish, catfish, "Kajun" sauce, "Cajun Fries" and other items. In addition to crawfish and catfish, the seafood items include shrimp, king crab legs, mussels, snow crab legs, blue crab, Dungeness crab, clams, and lobster.

13. Once prepared, the seafood is served in clear plastic bags at the guest's table.

14. Plaintiff's restaurants also feature an industrial sink in the main dining area for guests to wash their hands so that they do not have to interrupt their dining experience by visiting the restroom to wash their hands.

15. The restaurants are open and airy with wood paneled walls and wood tables. They are decorated with fish netting and other nautical items, with flat screen televisions spaced at even intervals along the top of all of the walls.

16. One particularly notable feature of Plaintiff's trade dress is the guest graffiti that covers the wood walls of the restaurants. Plaintiff's guests are provided markers for making their own graffiti and encouraged to leave messages or drawings.

17. The combination of these elements creates a distinctive overall look and feel, or trade dress, that is associated with Plaintiff's restaurants.

18. Plaintiff has continuously used the distinctive ANGRY CRAB SHACK family of marks, logos and trade dress since at least as early as 2013.

19. Plaintiff has spent significant sums to advertise and promote the ANGRY CRAB SHACK family of marks and related logos in print and broadcast media, social media, as well as on the Internet through Plaintiff's website, which is accessible throughout the United States and around the world at <angrycrabshack.com>.

20. Plaintiff's ANGRY CRAB SHACK restaurants have received rave reviews online on sites such as Yelp, in addition to receiving recognition as the "Best Seafood" restaurant in Phoenix for the year 2014 from Phoenix New Times.

21. Based upon its extensive use and promotion of the ANGRY CRAB SHACK marks, logos and trade dress, and the significant goodwill associated therewith, Plaintiff owns the exclusive right to use the ANGRY CRAB SHACK marks, logos and trade dress in connection with restaurants.

22. Plaintiff owns pending applications for federal registrations for both logos depicted above and for the word mark ANGRY CRAB SHACK (Serial Nos. 86558226, 86558214, and 86558203).

23. Plaintiff's rights extend into the Chicago area for a number of reasons.

24. The cities of Phoenix and Chicago share a close relationship. Large numbers of Chicago residents visit the Phoenix metropolitan area every year in March to interact with and watch up close their beloved Chicago Cubs during Major League Baseball's Spring Training. The Cubs play their games at Sloan Park in Mesa, Arizona, which is located just seven (7) miles from Plaintiff's ANGRY CRAB SHACK Mesa location.

25. Chicago residents are known each year to visit Phoenix during the winter and live in Phoenix part-time to avoid the winter conditions.

26. Additionally, Chicago residents frequently move here permanently to avoid the cold and/or retire here, returning frequently to Chicago to visit family and friends.

27. Furthermore, Plaintiff plans to expand its ANGRY CRAB SHACK restaurants to Chicago, among other major cities.

28. Plaintiff has plans to franchise the ANGRY CRAB SHACK concept, and they have initially identified the cities of Tucson, Atlanta, Denver and Chicago as targets for franchise stores.

29. Plaintiff has identified Chicago as a target for expansion due to the factors set forth above – the close relationship and migratory patterns between Chicago and Phoenix – as well as the personal connections some of the owners and investors in

Plaintiff have with Chicago from having lived there before migrating to Phoenix themselves.

30. Plaintiff's ability to enter the Chicago market and sell an ANGRY CRAB SHACK franchise will be severely hampered, if not prevented entirely, by the fact that Defendant is operating a virtually identical restaurant under a virtually identical mark.

**Defendant's Bad-Faith Use of the ANGRY CRAB Mark, Logo and Trade Dress**

31. Defendant was formed in the state of Illinois on or about January 21, 2015.

32. In or around February of 2015, Defendant opened a Cajun-themed restaurant serving bag boil seafood under the mark ANGRY CRAB.

33. The ANGRY CRAB mark is confusingly similar, and virtually identical, to Plaintiff's ANGRY CRAB SHACK family of marks.

34. Additionally, Defendant is using the following logo in connection with its restaurant:



This logo is confusingly similar to Plaintiff's menacing crab logo.

35. Plaintiff's use of the ANGRY CRAB SHACK family of marks and logos substantially pre-dates Defendant's use of ANGRY CRAB and the related logo.

36. Defendant's deliberate copying did not stop with use of a virtually identical mark and logo. Defendant also adopted a trade dress virtually identical to that of Plaintiff.

37. Defendant's ANGRY CRAB restaurant uses a similar Cajun theme, menu, and décor to create an overall look and feel identical to that of Plaintiff's restaurants.

38. Guests at Defendant's restaurant order seafood by the pound, and then they select their seasoning/sauce and spice level. Defendant's menu also offers numerous Cajun-themed items, including crawfish, Cajun spices, Cajun fries and andouille sausage. In addition to crawfish, the seafood items include shrimp, clams, oysters, blue crabs, king and snow crab legs, and Dungeness crabs.

39. Once the seafood is prepared, it is served in clear plastic bags at the guest's table.

40. Defendant's restaurant features a sink station in the main dining area for guests to wash their hands so that guests are not forced to interrupt their dining experience by visiting the restroom to wash their hands.

41. The restaurants are open and airy with wood paneled walls and wood tables. The décor features netting and other nautical themes (e.g. anchors and fish), with flat screen televisions spaced at even intervals along the top of the walls.

42. Notably, just like Plaintiff's ANGRY CRAB SHACK restaurants, Defendant's ANGRY CRAB restaurant features guest graffiti covering the wood walls of

the restaurant. Defendant's guests are also provided markers for making their own graffiti and encouraged to leave messages or drawings.

43. This combination of elements is an identical copy of the unique set of elements used by Plaintiff to create the overall look, feel and experience of the ANGRY CRAB SHACK restaurants.

44. It is no coincidence that Defendant is using the following: (a) a mark, ANGRY CRAB, virtually identical to that of Plaintiff's ANGRY CRAB SHACK family of marks; (b) a logo, depicting a red crab grimacing in anger, virtually identical to Plaintiff's grimacing crab logo; and (c) trade dress virtually identical to that used in Plaintiff's restaurants, including but not limited to, Cajun themes, clear plastic bags, nautical décor, and wood-paneled walls covered in guest graffiti. Defendant was aware of Plaintiff's restaurants, the substantial success of those restaurants, and the related and significant goodwill Plaintiff built in the ANGRY CRAB SHACK marks, logos and trade dress. Defendant intentionally adopted similar marks, logos and trade dress to that of Plaintiff seeking a free ride on the goodwill associated with the ANGRY CRAB SHACK marks, logos and trade dress and to confuse consumers as to the origin, sponsorship, and endorsement of Defendant's goods and services.

45. Defendant also makes prominent use of its infringing mark online. It has acquired, promoted and used the social media identities "theangrycrabshop" on Facebook and "angrycrabchicago" on Instagram with the bad-faith intent to profit from the goodwill and value associated with Plaintiff's valuable mark.

46. Defendant's infringement and blatant copying of Plaintiff's marks, logos and trade dress has caused, and will continue to cause, actual confusion.

47. For example, Plaintiff has received one or more telephone calls at its restaurants from consumers inquiring how they can purchase a gift card for the Chicago location, *i.e.*, Defendant's restaurant.

48. A blogger commenting on his experience visiting Defendant's ANGRY CRAB restaurant in Chicago felt the need to add at the bottom of his review the following tag line: "no *apparent* relation to the Arizona minichain the Angry Crab Shack." This blog entry evidences not only that Plaintiff's goodwill and reputation have extended to Chicago, but that the blogger is not sure whether there is an affiliation between Plaintiff's and Defendant's restaurants or not.

49. Plaintiff also received an email from one of its customers who visited Defendant's Chicago location because he was initially confused and believed Defendant's restaurant was associated with Plaintiff. After noting the poor quality and service at Defendant's restaurant, the customer determined the restaurants were not affiliated. He later contacted Plaintiff to advise it that Defendant was "killing it here [in Chicago] using your name" and expressed concern that the poor quality and service would ultimately hurt Plaintiff's reputation.

50. It is a basic tenet of trademark law that actual confusion is the best evidence of likely confusion, which is the standard for infringement.

51. Due to Defendant's infringing activities, on March 6, 2015 Plaintiff sent Defendant a letter demanding that it cease and desist its infringing use of the ANGRY CRAB mark.

52. Defendant has refused to comply with Plaintiff's demands.

53. Defendant has deliberately harmed, and will continue to harm, the goodwill enjoyed by Plaintiff among consumers by creating a false association between the genuine products and services provided by Plaintiff and those associated with the Defendant.

54. Defendant is not associated with Plaintiff and it is not authorized to use Plaintiff's marks, logos or trade dress, or to profit from the goodwill Plaintiff has generated in the same.

55. Defendant's adoption and use of confusingly similar marks, logos, and trade dress were intentional, willful and designed to unlawfully misappropriate and trade off Plaintiff's goodwill and reputation.

56. Defendant's acts described herein continue to cause Plaintiff irreparable harm for which it has no adequate remedy at law.

57. Defendant has not voluntarily ceased its infringing use of the ANGRY CRAB mark or logo or trade dress, thus necessitating the present lawsuit.

**COUNT I**
**Trademark Infringement, Unfair Competition and**
**False Designation of Origin**
**(15 U.S.C. § 1125(a) and Common Law)**

58. Plaintiff realleges and incorporates by reference each paragraph above as if fully set forth herein.

59. Plaintiff has spent substantial sums to promote, and has generated substantial revenue and recognition from, its ANGRY CRAB SHACK restaurants and the related marks and logos, which are inherently distinctive.

60. The distinctive ANGRY CRAB SHACK marks and logos have become impressed upon the minds of the trade and public as identifying Plaintiff's products and services, who understand them to indicate the source of origin of such products and services provided in association with the ANGRY CRAB SHACK restaurants owned and operated by Plaintiff.

61. Plaintiff has developed a large and valuable business through its use of the ANGRY CRAB SHACK marks and logos, and the reputation and goodwill in those marks is of great value to Plaintiff.

62. Defendant has used in commerce marks and logos which are confusingly similar to the ANGRY CRAB SHACK marks and logos, despite its having notice of Plaintiff's prior rights in and to the marks and logos, with the intent to confuse consumers into mistakenly believing that Defendant's restaurant is associated with, endorsed by or sponsored by Plaintiff.

63. Defendant's conduct constitutes trademark infringement, false designation of origin and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and common law.

64. As a result of Defendant's willful and intentional actions, Plaintiff incurred attorney fees and expenses.

65. As a result of Defendant's willful and intentional actions, Plaintiff has been damaged in an amount to be proven at trial.

66. Defendant has caused and, unless restrained and enjoined by this Court, will continue to cause irreparable harm, damage and injury to Plaintiff.

67. Plaintiff has no adequate remedy at law.

## COUNT II
### Trade Dress Infringement
### 15 U.S.C. § 1125(a)

68. Plaintiff realleges and incorporates by reference each paragraph above as if fully set forth herein.

69. Plaintiff has developed a distinctive overall look and feel for its restaurants that include without limitation the elements discussed above. This trade dress serves as an identifying mark in the mind of the consumer.

70. Defendant has misappropriated numerous non-functional elements of Plaintiff's distinctive trade dress to create an overall look and feel virtually identical to Plaintiff's restaurants.

71. As a result, consumers are likely to be confused and to mistakenly believe there is some affiliation between Plaintiff's and Defendant's restaurants, when there is not.

72. Defendant deliberately copied Plaintiff's trade dress for the purpose of creating this confusion.

73. Defendant's conduct constitutes trade dress infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and common law.

74. As a result of Defendant's willful and intentional actions, Plaintiff incurred attorney fees and expenses.

75. As a result of Defendant's willful and intentional actions, Plaintiff has been damaged in an amount to be proven at trial.

76. Defendant has caused and, unless restrained and enjoined by this Court, will continue to cause irreparable harm, damage and injury to Plaintiff.

77. Plaintiff has no adequate remedy at law.

### RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court enter an order for Plaintiff and against Defendant, granting the following relief:

(a) Defendant and their respective agents, representatives, servants, employees, attorneys, officers, directors, shareholders, licensees, affiliates, joint venturers, parents, subsidiaries, related corporations and companies, and all others in privity or acting in concert with them be preliminarily and permanently enjoined from:

    i. imitating, copying, duplicating or otherwise making any use of the ANGRY CRAB SHACK marks and logos or any mark confusingly similar to Plaintiff's marks and logos;

    ii. manufacturing, producing, distributing, circulating, selling or otherwise disposing of any product or material which bears any copy or colorable imitation of the ANGRY CRAB SHACK marks;

    iii. using any false designation of origin or false description which can or is likely to lead the trade or public, or individual members thereof, to mistakenly believe that any product or service advertised, promoted, offered or sold by Defendant is sponsored, endorsed, connected with, approved or authorized by Plaintiff;

    iv. causing likelihood of confusion or injury to Plaintiff's business reputation and to the distinctiveness of the ANGRY CRAB SHACK marks and logos by unauthorized use of the same;

    v. operating any website or social media presence associated with, using, or linking to any domain name, social media identification, or trademark or service mark that incorporates, in whole or in part, any of the ANGRY CRAB SHACK marks, or is confusingly similar thereto;

    vi. using any trade dress confusingly similar to Plaintiff's trade dress;

    vii. engaging in any other activity constituting unfair competition or infringement of the ANGRY CRAB SHACK marks or logos or Plaintiff's trade dress; or

    viii. assisting, aiding or abetting another person or business entity in engaging in or performing any of the activities enumerated in subparagraphs (i) through (vii) above.

 (b) Plaintiff be awarded Defendant's profits, damages sustained by Plaintiff, and the costs of this action and treble damages pursuant to 15 U.S.C. § 1117(a);

 (c) A finding that Defendant's violation of 15 U.S.C. § 1125(a) was and is willful as a result of the actions complained of herein, and that this is an exceptional case pursuant to 15 U.S.C. § 1117(a);

(d) An award to Plaintiff of its attorney fees and costs and expenses of litigation, pursuant to 15 U.S.C. §§ 1117(a);

(e) An award for pre- and post-judgment interest, on all applicable amounts, calculated at the maximum rate allowed by law; and

(f) Such other and further relief as the Court may deem just, proper and equitable under the circumstances.

## JURY DEMAND

Plaintiff demands trial by jury on all claims so triable.

**ANGRY CRAB SHACK CORPORATION**

By: /s/ Brian M. Bergin
Brian M. Bergin
Bergin, Frakes, Smalley & Oberholtzer, PLLC
4455 East Camelback Road, Suite A-205
Phoenix, Arizona 85018
(602) 888-7857

*-and-*

By: /s/ Charles A. Valente
Charles A. Valente
Krasnow Saunders Kaplan & Beninati, LLP
500 North Dearborn Street
Second Floor
Chicago, Illinois 60654
(312) 755-5700

*Attorneys for Plaintiff*